**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BERKEL & COMPANY CONTRACTORS, INC.,**

        **Plaintiff,**

**-vs-**          Case No. 6:06-cv-1073-Orl-31UAM

**HJ FOUNDATION, INC.,**

        **Defendant.**

_____

# ORDER

This matter comes before the Court following a hearing, held on January 23, 2008, addressing Defendant's Motion for Claim Construction (Doc. 57), Plaintiff's Cross-Motion for Claim Construction (Doc. 59), Defendant's Motion for Summary Judgment (Doc. 55) and the parties' respective responses thereto (Docs. 70, 71 and 79).[1]

**I. Background**

Plaintiff, Berkel & Company Contractors, Inc.("Berkel"), is the owner of U.S. Patent No. 6,033,152 (the "'152 Patent"), issued to Kenneth J. Blum on March 7, 2000 for "Pile Forming Apparatus." (Doc. 1 at 2). "The '152 Patent discloses and claims a lateral soil displacement and

---

[1] After Defendant filed its motion for claim construction, Plaintiff filed a Motion for a Claim Construction (*Markman*) Hearing (Doc. 59), which this Court granted by scheduling a hearing for November 8, 2007(which was later rescheduled for January 23, 2008). However, even after the hearing was scheduled, Defendant filed a response to the motion for hearing (Doc. 71) containing arguments pertaining to the actual construction of claims and not the issue of whether a hearing should be held. Therefore, it appears that Defendant construed Plaintiff's motion as a cross-motion for claim construction, and this Court will do the same.

compaction auger for drilling pile foundation holes and in situ formation of cementious (sic) piles." (Doc. 1 at 2). Berkel alleges that Defendant HJ Foundation, Inc. ("HJ") has infringed Claims 18-20 of the '152 Patent. (Doc. 59 at 2).[2]

Claim 1 of the '152 Patent describes an auger that is equipped with compaction rollers which are strategically spaced and mounted within the auger shaft. (Doc. 1 at 13). These rollers laterally displace and compact soil during bore hole formation, in order to minimize the amount of displaced material or "spoil" that results from the process. (Doc. 1 at 13).[3] However, the description of Claim 18 does not explicitly mention rollers. Instead, Claim 18 states:

> A lateral compaction auger used in the formation of bore holes adapted to receive cementitious material for the formation of piles and comprising:
> an elongated central shaft presenting a lower end;
> outwardly extending helical auger flighting supported on said shaft,
> at least a portion of said shaft and flighting being cooperatively configured for lateral displacement and compaction of soil during rotation of the auger
> said auger including an elongated drilling extension below said lateral compaction portion, said extension having a length at least about 50% of the length of said lateral compaction portion; and,
> a cutting lead supported on the end of said extension below said lateral compaction portion,
> said central shaft having an innermost, hollow, cementitious material-conveying pipe extending the full length thereof through said lateral compaction portion and said extension, there being a cementitious material opening adjacent the lower end of said extension.

(Doc. 1 at 17).

---

[2] Claims 19 and 20 are dependent on Claim 18. Therefore, only Claim 18 will be discussed in this Order.

[3] It is undisputed that HJ's auger does not have rollers and therefore, it cannot infringe on Claim 1. (Doc. 32 at 7).

The U.S. Patent and Trademark Office (the "PTO") initially rejected Claim 18[4] of the '152 Patent, because it was obvious in light of U.S. Patent No. 4,504,173 ("the '173 Patent" or "the Feklin Patent").[5]  In response to this rejection, Claim 18 was revised and resubmitted.  The PTO

---

[4]The original wording of Claim 18 is as follows:

A lateral compaction auger used in the formation of bore holes adapted to receive cementious (sic) material for the formation of piles and comprising:
> an elongated central shaft presenting a lower end;
> outwardly extending helical auger flighting supported on said shaft,
> at least a portion of said shaft and flighting being cooperatively configured for lateral displacement and compaction of soil during rotation of the auger,
> said auger including an elongated drilling extension below said lateral compaction portion, said extension having a length at least about 50% of the length of said lateral compaction portion; and
> a cutting lead supported on the end of said section remote from said lateral compaction portion.

(Doc. 56-3 at 19)(hereinafter referred to as "original Claim 18").

[5]According to the PTO:

Claims 18 and 19 are rejected under 35 U.S.C. 103(a) as being unpatentable over Feklin (U.S. Patent No. 4,504,173).
Feklin '173 discloses an apparatus for constructing cast in place tubular piles, the apparatus comprising an elongated central shaft (1) presenting a lower end, outwardly extending helical auger flighting (19) supported on said shaft, at least a portion (6) of said shaft and flighting being cooperatively configured for lateral displacement and compaction of soil during rotation of the auger, said auger including an elongated drilling extension (combination of 2 and 3) below said lateral compaction portion, said extension having a length which appears to be at least about 50% of the length of said lateral compaction portion and a cutting lead (5) supported on the end of said extension below said lateral compaction portion.. . . Feklin '173 does not expressly teach a drilling extension at least 50% the length of the lateral compaction portion. However, it would have been well within the level of ordinary skill for one in the art of foundations at the time of invention to make the drilling extension of the apparatus shown by Feklin '173 fifty percent of the length of its lateral compaction portion. The motivation for modification would have been to effect desired penetration of underlying dense soil strata.

(Doc. 56-4 at 5-6).

then accepted this revised version of Claim 18 ("revised Claim 18) without explanation, despite the fact that there is very little difference between the two versions. Therefore, HJ argues that the PTO must have intended to incorporate the description of the auger laid out in Claim 1 into Claim 18, and if this is true HJ has not infringed on Claim 18 because its auger does not have rollers. Berkel, of course, defends Claim 18 arguing that it is patentable even without rollers.

## II. Standards of Review

### A. Claim Construction

Determining whether an accused process or device infringes a patent claim is a two-step process. The first step is claim construction, which involves ascertaining the scope and meaning of the claims at issue, while the second step involves determining whether the claims as construed read on the accused device. *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chemical Co.*, 204 F.3d 1360, 1363 (Fed. Cir. 2000). Interpretation and construction of patent law claims is a question of law to be resolved by the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d, 967, 970-71 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). "In determining the proper construction of a claim, the court has numerous sources that it may properly utilize for guidance. These sources ... include both intrinsic evidence (*e.g.*, the patent specification and file history) and extrinsic evidence (*e.g.*, expert testimony)." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language and should be looked to first. *Id.* But the different forms of intrinsic evidence are not weighted equally.

> First, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention. Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own

lexicographer and use terms in a manner other than their ordinary meaning, so long as the special definition of the term is clearly stated in the patent specification or file history.

Thus, second, it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. As we have repeatedly stated, claims must be read in view of the specification, of which they are a part. The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it. Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.

Third, the court may also consider the prosecution history of the patent, if in evidence. This history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims. As such, the record before the Patent and Trademark Office is often of critical significance in determining the meaning of the claims.

In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence. In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. The claims, specification, and file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely. In other words, competitors are entitled to review the public record, apply the established rules of claim construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention. Allowing the public record to be altered or changed by extrinsic evidence introduced at trial, such as expert testimony, would make this right meaningless.

*Id.* at 1582-83 (internal citations and quotations omitted).

### B. Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to

the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the

motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

### III. Claim Construction

There are two claim terms which this Court has been asked to construe: (1) "lateral compaction auger"; and (2) "elongated drilling extension". However, because the Court finds that the definition of "elongated drilling extension" is not material to the outcome of this case, the construction of that term will not be reached. The parties' proposed constructions of the claim term at issue are set out below:

| Claim Term | HJ's Proposed Construction | Berkel's Proposed Construction |
|---|---|---|
| "lateral compaction auger" | "an auger having an outer shaft body presenting a central region of maximum diameter, with the shaft including a series of spiral sections being of decreasing diameter from the central region toward both the upper and lower ends of the auger, and with a series of roller assemblies on the lower shaft sections" | "a tool for boring holes and/or moving loose material, in which the tool has a shaft and flighting designed to laterally displace soil during bore hole formation and to compact the soil at the periphery of the bore hole" |

Because this term is not defined in the specifications of the patent, the Court will first look to the ordinary meaning of the terms. The American Heritage Dictionary defines the term "auger" as follows:

> 1. Any of various hand tools, typically having a threaded shank and cross handle, used for boring holes in wood or ice.
> 2. A drill bit.
> 3. A machine having a rotating helical shaft for boring into the earth.
> 4. A rotating helical shaft used to convey material, as in a snow blower.

Dictionary.com. The American Heritage Dictionary of the English Language, 4th Ed. Houghton Mifflin Company, 2004 *at* http://dictionary.reference.com/browse/auger (accessed: January 24, 2008). Clearly, it is the third definition that is applicable here.

The term "lateral compaction auger", therefore, should refer to a machine having a rotating helical shaft for boring into the earth which laterally compacts soil. According to the '152 Patent, an auger had been previously invented that laterally compacted soil, but did not employ rollers. Instead, lateral compaction was achieved by use of "an expanding spiral configuration" and is referred to in the '152 patent as a "conventional lateral soil displacement auger." Col. 1 at lines 46-57. It seems only logical that both types of augers (those with expanding spiral configurations and those with rollers) can be referred to as lateral compaction augers. The construction proposed by HJ is simply to narrow. It does not fit with the ordinary meaning of the term and neither the language of Claim 18, nor the definition of auger provided in the specifications, mention rollers. Therefore, this Court adopts the claim construction proposed by Berkel with regard to the definition of "lateral compaction auger" and finds that Claim 18 describes a lateral compaction auger *without* rollers.

**IV. Patent Validity**

HJ argues that Claim 18, as construed by this Court, is not patentable because it was obvious in light of the prior art.

> An invention is not patentable, *inter alia*, "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Because a patent is presumed to be valid, 35 U.S.C. § 282, the evidentiary burden to show facts supporting a conclusion of invalidity, which rests on the accused infringer, is one of clear and convincing evidence. *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003).

*Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007). Whether an invention is obvious under 35 U.S.C. § 103 ("§ 103") is a question of law. *Id*.

> The Supreme Court recently addressed the issue of obviousness in *KSR International Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007). The Court stated that the *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966), factors still control an obviousness inquiry. Those factors are: 1) "the scope and content of the prior art"; 2) the "differences between the prior art and the claims"; 3) "the level of ordinary skill in the pertinent art"; and 4) objective evidence of nonobviousness. *KSR*, 127 S. Ct. at 1734 (quoting *Graham*, 383 U.S. at 17-18).

*Takeda,* 492 F.3d at 1355.

The only difference between the Feklin Patent and the Berkel's Claim 18 is the addition of "a cementitious material opening adjacent the lower end of said extension." (See Doc. 56-4 at 5-6; Doc. 56-2 at 12). Berkel argues that this is a patentable improvement because, in prior augers, cementitious material was discharged through the very bottom of the auger, pushing off the tip, which would detach from the auger and was referred to as a "lost shoe." According to Berkel, Blum's use of a side port through which cementitious material is deposited solves the problem of the lost shoe, allowing for the use of more expensive drill tips, and makes Claim 18 patentable.[6] HJ, however, has demonstrated that this type of opening already existed in Patent No. 3,255,592 ("the Moor Patent"), issued in 1966, which describes an auger in which "[t]he tubular stem of the auger has an aperture 13 adjacent to the tip 12 through which concrete grout may be discharged adjacent to the leading end of the auger." Thus, HJ has shown by clear and convincing evidence that all of the elements of the Claim 18 auger existed within the prior art.

---

[6]Berkel also argues that Claim 18 is unique because it contains a cutting lead. (Doc. 79 at 18). However, this is incorrect because the Feklin Patent (and the original Claim 18) also disclosed a cutting lead, as stated by the PTO. (Doc. 56-4 at 6).

> For over a half century, the [Supreme] Court has held that a "patent for a combination which only unites old elements with no change in their respective functions . . . obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men." *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152, 71 S. Ct. 127, 95 L. Ed. 162, 1951 Dec. Comm'r Pat. 572 (1950). This is a principal reason for declining to allow patents for what is obvious. The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.

*KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1739 (2007).

To determine whether putting all these components together was an obvious improvement or a patentable invention "a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions." *See id.* at 1740.

According to Berkel, the purpose of using a side opening for cementitious discharge is to avoid the "lost shoe" problem that results from discharging cementitious material through the bottom of the auger. Berkel argues that, even though prior patents disclosed the use of side discharge holes, those patents did not seek to solve the lost shoe problem. (Doc. 79 at 20-21). However, the motivations of the inventors are irrelevant here.[7] It is undisputed that the problem of the lost shoe was already known in the industry, and even for someone only vaguely familiar with augers, it is obvious that the way to avoid a lost shoe is to discharge the cementitious material above the shoe, that is through the side, rather than through the bottom.

---

[7] In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under § 103. One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims. *KSR*, 127 S. Ct. at 1741-42.

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under § 103.

*KSR*, 127 S. Ct. at 1742.

In light of the prior art, the auger disclosed in Claim 18 is nothing more than an application of common sense that produces a predictable result. Therefore, this Court finds that the Patent of Claim 18 is invalid due to obviousness.

## V. Conclusions

For the reasons stated herein, it is

**ORDERED** that Defendant's Motion for Claim Construction (Doc. 57) is **DENIED**, Plaintiff's Cross-Motion for Claim Construction (Doc. 59) is **GRANTED** in part and **DENIED** in part and Defendant's Motion for Summary Judgment (Doc. 55) is **GRANTED**. Judgment shall be entered in favor of Defendant HJ Foundation, Inc., and the Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 25, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party